### WIESS v. HALL.[†]

(Court of Civil Appeals of Texas. Feb. 18, 1911. Rehearing Denied March 9, 1911.)

1. EVIDENCE (§ 288*)—DECLARATIONS—BIRTH AND DEATH—REPUTATION.

On the issue whether a certain child was born dead or alive, testimony of a neighbor, in a thinly scattered neighborhood, that it was generally understood that the child was born dead was admissible to corroborate the testimony of the mother and her daughter, although

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
†Writ of error denied by Supreme Court April 12, 1911.

the testimony of the latter was somewhat impeached.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1147; Dec. Dig. § 288.*]

**2. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—HEARSAY.**

Where a particular fact was established by abundant testimony, it was harmless error to allow a witness to testify that his mother told him of the fact.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4160–4170; Dec. Dig. § 1051.*]

**3. WITNESSES (§ 236*)—EXAMINATION—QUESTION NOT TOO GENERAL.**

Where an interrogatory: "State, if you know, what was the name of H. R.'s father. State fully all you know about that"—was asked, that part of the interrogatory, "State fully all you know about that," was intended to elicit what witness knew about the particular matter inquired about (that is, the paternity of H. R., and also the source of his information), and was not too general.

[Ed. Note.—For other cases. see Witnesses, Cent. Dig. § 821; Dec. Dig. § 236.*]

**4. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—EVIDENCE—ADMISSION.**

The admission of an answer objectionable, as not responsive .to the interrogatory, is harmless error, where there was an abundance of other evidence as to the facts therein stated.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

**5. EVIDENCE (§ 288*)—DECLARATIONS—RELATIONSHIP.**

On the issue whether witness' husband was a son of Enoch S. R., evidence that witness had heard her husband, H. R., speak of his father, Enoch S. R., and had heard others since her .husband's death, and also that she had seen a deed to Enoch S. R. in her husband's trunk, was not objectionable.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1147; Dec. Dig. § 288.*]

**6. APPEAL AND ERROR (§ 1051*)—PREJUDICIAL ERROR—ADMISSION OF EVIDENCE.**

Where every independent fact stated in an affidavit was testified to by a witness, and most of them shown to be true, an affidavit could have added nothing thereto, and, though objectionable, its admission was harmless error.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1051.*]

**7. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR.**

On the issue of the descent of lands from the son of E. S. R., evidence that he was said to be a gambler and had that reputation, while immaterial and irrelevant, is so trivial and unimportant that error in admitting it was not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4154; Dec. Dig. § 1050.*]

**8. TRIAL (§ .296*) — INSTRUCTIONS—MISLEADING INSTRUCTIONS.**

Where a trial court instructed the jury that marriage was one of the facts essential to appellee's recovery, which must be established by him, a subsequent reference in the charge to H. R., who was married to F. L., could not have been understood by the jury as assuming that to be a fact.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 296.*]

**9. EVIDENCE (§ 147*)—NEGATIVE EVIDENCE—LICENSE TO MARRY.**

That there was no record in the county clerk's office of a marriage license about the date of an alleged marriage does not show that no such license had been issued, as it might have been issued, executed, and never returned, in which case no record would have appeared of such issuance.

[Ed. Note.—For other ·cases, see Evidence, Cent. Dig. §§ 435–437; Dec. Dig. § 147.*]

**10. MARRIAGE (§ 52*) — INSTRUCTIONS — MARRIAGE LICENSE.**

It was not error to refuse an instruction that, if there was no record in the county clerk's office of a marriage license, it showed that no such license had been issued, where the evidence was overwhelming that parties lived together as husband and wife, and were received as such, independently of other testimony that they were married by a minister of the gospel, as the jury might have been misled to believe that there could not have been a valid marriage without such a license.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 91; Dec. Dig. § 52.*] ·

**11. DESCENT AND DISTRIBUTION (§ 71*)—HEIRSHIP—EVIDENCE—WEIGHT AND SUFFICIENCY.**

Evidence on the issue whether a certain child was born alive *held* sufficient to support a finding that it was born dead.

[Ed. Note.—For. other cases, see Descent and Distribution, Dec. Dig. § 71.*]

**12. APPEAL AND ERROR (§ 1031*)—PREJUDICE—PRESUMPTION FROM ERROR.**

The mere fact of error does not carry the presumption of prejudice.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4038; Dec. Dig. § 1031.*]

Appeal from District Court, Orange County; W. B. Powell, Judge.

Action by D. G. Hall against William Wiess. From a judgment for plaintiff, defendant appeals. Affirmed.

Adams & Huggins, H. M. Whitaker, and Carlton & Townes, for appellant. Geo. E. Holland and Greer & Minor, for appellee.

REESE, J. This is an action in trespass to try title by D. G. Hall against William Wiess to recover three sections of land in Orange county, with damages, etc. The plaintiff, in addition to a general allegation of title, pleaded specially title under the three, five, and ten years statute of limitation. Defendant pleaded not guilty, and also specially pleaded title by limitation, and impleaded his warrantors, but dismissed as to them. Trial with a jury resulted in a verdict and judgment for plaintiff for the land· sued for, and $150 damages for removal of fence, from. which judgment the defendant appeals.

The land belonged to J. L. Lavender, who, in 1869, sold and conveyed the same to Enoch S. Robinson by deed with general warranty. Plaintiff claims under Enoch S Robinson by virtue of the following alleged facts: Enoch Robinson and his wife died some time in the seventies, leaving surviving them Henry Robinson, their only child and sole heir. Henry Robinson, about 1888, married one Florence Worley, a widow with three children—daughters. He died shortly after the marriage, and about eight months

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

after his death his widow gave birth to a male child, issue of the marriage, who was born dead. Henry Robinson leaving neither father nor mother, brothers nor sisters, nor living issue, the land in controversy which had descended to him from his father, Enoch Robinson, descended to, and the title vested in, his widow, Florence, who, under the name of Florence Lambert, she having afterwards married a man of that name, who died, sold and conveyed the land to the appellee, Hall. Appellant had a deed from one Mitchell, who claimed to be a nephew of the Enoch S. Robinson to whom Lavender conveyed. He also claimed title under deeds from two of the three daughters of Florence Worley aforesaid, who were half-sisters of the alleged child of the said Florence and Henry Robinson. Appellee seems to have acquired the title to the interest of the other of the three daughters.

The issues presented by the charge of the court are: (1) Was the Enoch S. Robinson to whom Lavender conveyed the land the father of Henry Robinson? (2) Did the said Enoch and his wife die leaving the said Henry their sole issue and heir? (3) Was the said Henry married to Mrs. Florence Worley (afterwards Florence Lambert)? (4) Did said Henry die after such marriage? (5) Was there a child born, the issue of such marriage?

The jury was instructed that, if they found all of these issues in the affirmative, and, further, that the child referred to was born dead, appellee was entitled to recover all of the land; but that, if they found these issues in the affirmative, and that the child was born alive, appellee was entitled to recover two-thirds of the land, and appellant one-third. This upon the theory that, if the child was born dead, the entire inheritance from Henry Robinson was cast upon his surviving wife; but that, if the child was born alive, the inheritance was cast upon the child, and upon its death one-half of the land descended to the mother, and the other half to the three half-sisters, one of which interests of one-sixth, together with the widow's one-half, was conveyed to appellee, and the other two-sixths to appellant. No question is raised on this appeal on the issue of limitation by either party. The really contested issue is as to whether the child referred to was born dead or alive, though some issue is attempted to be made, also, as to the identity of Henry Robinson's father with the Enoch S. Robinson to whom Lavender conveyed the land, and as to the marriage of Henry with Florence Worley, who, as Florence Lambert, conveyed to appellee.

The evidence is sufficient to support the following conclusions of fact: The land in controversy was the property of Enoch S. Robinson, who was the father of the Henry Robinson, under whom appellee claims title. This Henry was the only child and sole heir at law of the said Enoch and his wife, both of whom died before the death of said Henry. Henry Robinson married Florence Worley, and died a few months after the marriage. There was born, issue of this marriage, to Florence . Robinson, the widow, about seven or eight months after the death of Henry, a male child, who was born dead. The widow afterwards married one Lambert, and under the name of Florence Lambert conveyed the land to appellee. At the time of the birth of this child, there were living three daughters of Mrs. Robinson by former marriage, who, if the child had been born alive, would upon its death have inherited one-sixth each of the land in controversy. Appellant is the owner by deeds of the interests, if any, of two of these half-sisters, and appellee of the interest of the other. There is no dispute as to the death of this child; appellant claiming that it lived a few months, and appellee that it was born dead.

On the issue of whether the child was born alive or dead the following evidence was admitted in behalf of appellee, over the objection of appellant: Witness Christian, who lived in the neighborhood where Mrs. Robinson was living at the time of the birth of the child, about 1888, testified: "I remember the burial of the child, because at the time it was generally reputed to have been an abortion and to have been prematurely born." The same witness testified in answer to another interrogatory: "Yes, Mrs. Robinson was reported to have given birth to a child after the death of her husband. It was reported to have been an abortion." He also testified: "It was at the time reported to have been an abortion, and I have never heard that statement contradicted." Witness E. F. Gregory, who also lived in the neighborhood and knew Mrs. Robinson, in answer to an interrogatory as to whether Mrs. Robinson after her marriage gave birth to a child after her husband's death, and whether it was born alive or dead, testified: "I do not know of my personal knowledge; but it was reported that she had a child, which was born after her husband's death, and that it was born dead." All of this testimony was objected to by appellant on the grounds that it was hearsay, did not purport to be family repute, nor did it purport to have come from any member of the Robinson family; that it did not purport to be general reputation of any character, and came under no exception to the general rule as to hearsay testimony. The same objections were made to the following testimony of Flora Tyra: "The general report in the neighborhood at the time was that the child was born dead." This witness was also shown to have been living at the time in the neighborhood, in fact, with the nearest neighbor of Mrs. Alexander, at whose house Mrs. Robinson was living at the birth of the child. The objections were overruled

and the question of the admissibility of the testimony is presented by the first, fourth, and sixth assignments of error. The general proposition is stated that hearsay evidence as to births and deaths, to be admissible, must come from some one connected by blood or marriage with the party, or, as it is otherwise stated, that it is only family repute that is competent to establish births or deaths.

It is to be noted that the issue presented, and in support of which the evidence was admitted, was not as to the relationship of this dead child. The uncontroverted testimony, as we view it (although the court admitted the issue to the jury), showed that Henry Robinson and Florence Worley were husband and wife, and that the child referred to was the issue of this marriage, and was dead. The evidence is directed to the single uncomplicated issue of whether it was born alive or dead. The occurrence was 20 years before the trial and before the depositions were taken. It was shown that, of the persons who might be supposed to have actual, personal knowledge of the fact (except the mother and half-sister, whose testimony will be referred to later), all of them were either dead or had disappeared. In fact, the evidence offered was (with the exception stated) not only the best evidence, but the only evidence obtainable upon this issue. Mrs. Robinson (now Mrs. Lambert), the mother, testified twice by deposition in this case that the child was born dead, about eight months after the death of the father. Mrs. Baumgardner, who was at the time about eight or nine years old, and the only one of the three daughters old enough to have any knowledge of the matter, also testified that the child was born dead. But the testimony of both of these witnesses was to some extent impeached by statements made by them, as witnesses in another case, to the effect that the child lived several months. So it became important for appellee to support and corroborate the testimony of both of these witnesses, who alone were able to testify upon their personal knowledge. In such case we think that the necessities of the case were the same as if no witnesses could be found who had personal knowledge of the facts, and the corroborative testimony referred to was therefore not only the best, but the only, evidence obtainable. The evidence is also free from suspicion. The witnesses have absolutely no interest in this controversy, and no conceivable motive to testify falsely. They were in a position to know the facts testified about; that is, the general repute. The fact to be proven is plain and simple, and free from complications. Again, we think it is to be considered that the fact to be proved occurred in a thinly settled country neighborhood, where such a fact would be likely to attract attention among the neighbors, and be more or less discussed. Taking all these circumstances together, there can be not the slightest doubt that the testimony is logically relevant and would be considered valuable by any one searching for the very truth of the matter. In such case we think it would be discreditable to the administration of justice to refuse to admit the testimony. As the case is presented by the evidence, to have limited such reputation of this fact to the family of the child would have been tantamount to limiting it to Mrs. Lambert, the mother, and Mrs. Baumgardner, the half-sister, both of whom testified directly to the fact as of their personal knowledge.

In speaking of this ground for admitting general reputation, not confined to the family, the Supreme Court of Illinois says, in Ringhouse v. Keever, 49 Ill. 471: "In a population as unstable as ours, and comprising so many persons whose kindred are in distant lands, the refusal of all evidence of reputation in regard to death, unless the reputation came from family relatives, would sometimes render the proof of death impossible, though there might exist no doubt of the fact, and thus defeat the ends of justice."

If such evidence be admissible to prove the death of the child, clearly it would be admissible to prove that it was born dead. In the seeming conflict of authorities upon this question, we prefer to follow those in support of its admissibility as more in consonance with right, justice, and common sense. Such evidence is received as the best that can be obtained, and admitted under the necessities of the particular case for this reason. Such evidence is held admissible by Prof. Wigmore in his valuable work on Evidence. 2 Wigmore, Ev. § 1605. The author says, speaking directly of this character of evidence: "It seems finical to exclude from any consideration whatever, in a legal investigation, a class of evidence which is not only much relied upon in practical affairs, but is also sufficiently within the general rule of, two exceptions (reputation and family history) to the hearsay rule. Such evidence was once in England orthodox enough, and its use has been vindicated, on grounds of public policy and of principle, by many American courts, as admissible in certain classes of cases." Several authorities are cited in support of the text. In our own courts the following decisions support the rule announced: Primm v. Stewart, 7 Tex. 178; Wall v. Lubbock, 118 S. W. 886; Henderson v. State, 14 Tex. 503. Such testimony was also held admissible in Flowers v. Haralson, 6 Yerg. (Tenn.) 494; Jackson v. Etz, 5 Cow. (N. Y.) 314; Arents v. L. I. R. R. Co., 156 N. Y. 1, 50 N. E. 422. In Primm v. Stewart, supra, it was held that such evidence was admissible not only on the ground that it was a question of pedigree, but irrespective of that question, it seems, as a circumstance in proof of a fact, to establish which no direct evidence

was obtainable. In other words, that it was the best evidence obtainable. We do not think this holding is in conflict with Fowler v. Simpson, 79 Tex. 611, 15 S. W. 682, 23 Am. St. Rep. 370, or any other Texas case which we have been able to find. We are of the opinion that the assignments of error referred to should be overruled.

By the fifth assignment of error appellant complains of the admission of the testimony of the witness Gregory that his mother told him that Mrs. Worley had married and moved to the country, and that witness understood that she had married a man named Robinson. Without pausing to discuss whether this evidence was admissible, our conclusion is that if there was error it was harmless. The facts of Mrs. Worley's marriage to Henry Robinson, and that she was living in the country when the baby was born, is established by such an array of testimony as to leave not the slightest doubt as to these facts.

By the seventh and eighth assignments appellant presents the question of the admissibility of the testimony of the witness Flora Tyra that on the day of the birth of the child she had heard both Mrs. Montgomery and Mrs. Robinson say that the child was born dead. This witness was at the time living in the family of Mrs. Montgomery, a near neighbor of Mrs. Alexander, with whom Mrs. Robinson was living. She testified that Mrs. Montgomery was with the mother when the child was born, and that when she came home she told witness that Mrs. Robinson had given birth to a child, and that it was born dead. She also testified that it was understood by those about them that the child was born dead. The witness further testified, in this connection, that she then took one of the children of Mrs. Montgomery and went over to Mrs. Alexander's; that when she arrived there Mrs. Robinson was in grief, and said that her baby was born dead. She saw the dead baby about two hours after it was laid out. The two families lived about 200 yards apart. The witness also testified as to the general report in the neighborhood, to which reference has been made. The testimony was admissible in the circumstances above stated. Primm v. Stewart, supra; Scott v. Ratliffe, 5 Pet. 81, 8 L. Ed. 54; Turner v. Sealock, 21 Tex. Civ. App. 594, 54 S. W. 358; Stouvenel v. Stephens, 2 Daly (N. Y.) 319.

The tenth and eleventh assignments of error are addressed to the alleged error in refusing, on motion of appellant, to quash the answer of the witness Florence Lambert to the tenth interrogatory propounded by appellee. The interrogatory was: "State, if you know, what was the name of Henry Robinson's father. State fully all you know about that." To which the witness answered: "I have often heard Henry Robinson, my husband, speak of Enoch Robinson as his father. He said his name was Enoch S. Robinson. I heard Henry Robinson speak of his father, Enoch Robinson, and he said that he and his wife, Henry Robinson's mother, were both dead, and that he, Henry Robinson, was the only child." That part of the interrogatory, "State all you know about that," was intended to elicit from the witness what she knew about the particular matter inquired about; that is, the paternity of Henry Robinson, and also the source of his information. The interrogatory was not, we think, too general. The objection to the latter part of the answer, to wit, that Henry Robinson said that his father and mother were both dead, and that he was the only child, may be subject to the objection that it was not responsive to the interrogatory; but there was such an abundance of other evidence as to these facts, from this witness and others, that the error is not ground for reversal. The assignments are therefore overruled.

There was no error in admitting, over objection of appellant, the answer of Mrs. Lambert to the eighth cross-interrogatory propounded by appellant, in substance, that she had heard her husband, Henry Robinson, speak of his father, and had heard others since her husband's death, and also that she had seen a deed to Enoch S. Robinson in her husband's trunk. The witness did not undertake to speak of the contents of the deed, but only of the single circumstance of seeing the deed in her husband's trunk. She in fact testified that she had seen a deed from Lavender (who conveyed the land in controversy to Enoch S. Robinson), but on objection by appellant the court struck out the name "Lavender." Upon the issue as to whether Henry Robinson was the son of Enoch S. Robinson, it was a significant circumstance that he had in his possession a deed to Enoch S. Robinson, as tending to show some sort of connection or relationship between them. We are inclined to think that upon the issue of the identity of the father of Henry Robinson with the Enoch S. Robinson to whom Lavender sold the land, which was attempted to be put in issue and was submitted to the jury, it was admissible to show that this deed which the witness saw was from Lavender to Enoch S. Robinson; but that question is not before us. The twelfth, thirteenth, and fourteenth assignments of error, and the several propositions thereunder, are overruled.

Appellee propounded interrogatories to Florence Lambert, and among the cross-interrogatories propounded by appellant was one in which she was asked if she did not make the following affidavit: "Before me, C. Collins, a notary public, on this date, personally appeared Mrs. Florence Lambert, a widow, who upon oath says that she was married to Henry Robinson in Brazos county, Texas; that Henry Robinson is now dead,

and her child born to her by the reason of said marriage to Henry Robinson, who was the son of Enoch S. Robinson; that her said husband, Henry Robinson, died before her child died; and that Henry Robinson was the only son and only heir of En·ch S. Robinson. Affiant says that she had the deed to the land in Orange county, Texas, which she gave to a man by the names of Barnes to look after, being the deed made to Enoch S. Robinson. To the best of her knowledge the deed was made in 1869, and says that she had never sold any. of said land to any one." Two commissions were issued, under each of which the deposition of the witness was taken. In the one case she answered that she did not remember that she answered just exactly as stated in the affidavit, but that she had made a statement that Henry Robinson died several months after their marriage, and that the baby was born dead several months after he died. In answering under the other commission, she merely answered that she had made the affidavit at the request of Dr. Hall, and that it was delivered to him. Appellant declined to read this question and answers thereto, and the same were offered by appellee. Appellant made voluminous objections to this, which the court overruled, and this action of the court is made the basis of the fifteenth and sixteenth assignments of error, and several propositions are stated thereunder. We are very much in doubt whether this was admissible over appellant's objections, even in consideration of the fact that appellant had called for such answers by his cross-interrogatories. German v. Browne & Leeper, 145 Ala. 364, 39 South. 743; Wolfe v. Sharpe, 10 Rich. Law (S. C.) 62; Elliott v. Shultz, 10 Humph. (Tenn.) 235.

The testimony, however, was not independent evidence of the facts stated, but only of the fact that Mrs. Lambert had made such an affidavit. Independent of this fact, however, a careful reading of the statement of facts will show that every independent fact stated in the affidavit was testified to by this witness, and most of them were shown to be true by such testimony, uncontradicted as it is; that this affidavit could have added nothing thereto. It is nowhere else shown, it is true, that Mrs. Lambert had had in her possession a deed to this land from Lavender to Enoch Robinson, made in 1869, but this only tended to show that the Enoch S. Robinson who was her husband's father was the grantee of that name in the deed from Lavender, and other evidence left no doubt whatever of this fact. As to the statement that the child was born dead, in one of the answers of the witness she testified to this, not once, but many times, in these depositions, and the additional statement of the fact in this affidavit could not have prejudiced appellant. In the aspect presented by the evidence, not contradicted upon these is-

sues, we are not inclined to reverse the judgment for the error in allowing appellee to read this interrogatory and the answers thereto.

What we have said also disposes of the questions presented by the seventeenth assignment of error, which relates to similar interrogatory and answers of the witness Maggie Baumgardner.

The testimony of the witness James Harkins that Enoch S. Robinson was said to be a gambler and had that reputation was immaterial and irrelevant, and the objections of appellant thereto should have been sustained; but the testimony is of such trivial and unimportant character that the error is not ground for reversal. We are at a loss to understand why counsel for appellee should have insisted upon it, after objection had been made by appellant.

Looking to the entire charge, it is not correct, we think, to say that the court assumed that Florence Lambert and Henry Robinson were married, although we are inclined to think that it might have properly done so, considering the uncontradicted evidence on this point. But the court instructed the jury clearly that this was one of the facts essential to· appellee's recovery, and which must be established by him. The subsequent reference in the charge to the Henry Robinson who was married to Florence Lambert could not have been understood by the jury as assuming that to be a fact, in view of the plain instruction of the court, submitting this as a contested issue.

The charge requested by appellant, the refusal to give which is complained of in the twentieth assignment of error, was improper. The evidence of the county clerk of Brazos county that there was no record in his office of a marriage license, about the date of the alleged marriage ·of Henry Robinson and Florence Worley, when taken in connection with what he said on this point, did not show that no such license had ever been issued. It might have issued and been executed and never returned, in which case no record would have appeared of such issuance. But the particular vice in the charge is that, if given, it would have probably led the jury to believe that there could not have been a valid marriage without the issuance of a marriage license by the county clerk. The evidence is overwhelming that Henry Robinson and Florence lived together as husband and wife, were received as such, and in every way conducted themselves as sustaining this relation, independently of the positive testimony of Florence Lambert and Maggie Baumgardner that they were married by a minister of the gospel. This was sufficie t to constitute a legal marriage in this state. Cumby v. Henderson (on rehearing) 6 Tex. Civ. App. 519, 25 S. W. 675; Chapman v. Chapman, 11 Tex. Civ. App. 392, 32 S. W. 565; Bull v. Bull, 29 Tex. Civ. App. 364, 68

S. W. 727; Railway v. Cody, 20 Tex. Civ. App. 520, 50 S. W. 135.

By the twenty-first assignment of error appellant complains of the refusal of the court to grant him a new trial on the ground that the verdict and judgment are contrary to the evidence, and without evidence to support them. The assignment is without merit. The issues in the case were: Was Henry Robinson the only son and heir of the Enoch S. Robinson, to whom Lavender sold the land? Was he married to Florence Worley, and was the child born of the marriage born dead? If all of these issues be answered in the affirmative, appellee's right to recover the land is clear. As to the first two, the evidence leaves not a shadow of a doubt. Nor is there any doubt that there was born to Henry Robinson and his wife, Florence, a child, and scarcely more doubt that this child was born after Henry Robinson's death. The only doubt cast upon the fact that this child was born dead arises from the former statements of Mrs. Lambert (the mother) and Mrs. Baumgardner that this child was born alive. Their statements only served to impeach their testimony to the contrary in the present case and to weaken its force. There was an abundance of testimony, to which we have called attention in passing upon the several assignments, to corroborate their testimony in the present case that the child was born dead. The testimony upon this issue was entirely sufficient to authorize the finding of the jury. The court did not err in refusing the motion for a new trial.

There was sufficient evidence to support the finding of the jury as to the $150 damages on account of the destruction or removal of the fence placed on the land by appellee.

The record is not without errors; but none of them, we think, presents sufficient grounds for reversal. The courts in this state have gotten away from the old dogma, for a time considered as the very citadel of our jurisprudence, that "where error is shown, prejudice will be presumed." As early as 1834 the Supreme Court of New York, in the case of Crary v. Sprague & Shaw, 12 Wend. 47, 27 Am. Dec. 110, stated the law to be that: "To induce the granting of a new trial, there should be strong probable ground to believe that the merits have not been fully and fairly tried, and that injustice has been done." The court had special reference to certain evidence which was held to have been improperly admitted. It is not necessary to go so far to uphold the judgment in the present case.

We have examined each of the assignments of error and the propositions thereunder, and are of the opinion that none of them presents sufficient grounds for reversal of the judgment, and it is therefore affirmed.

Affirmed.