J. A. TURNER v. W. M. PERSON and A. L. BATTLE.

(Filed 20 March, 1918.)

1. **Evidence—Family History—Birth of Child—Declarations — Physicians—Repute—Tenant by the Curtesy.**

    Where the controversy depends upon whether the father is tenant by the curtesy in his wife's land by the birth of a child alive of the marriage, and those who were present are all dead, including the family physicians, it is competent for the father to testify to the fact, and of declarations made to him by the physicians at the time, at least in corroboration of his testimony ; also a brother-in-law not interested in the action is competent as to family repute, and testimony by a third person, at least in corroboration, of such general reputation in the community.

2. **Evidence — Birth of Child — Presumptions — Instructions — Appeal and Error.**

    Where the controversy depends upon whether the father was tenant by the curtesy in his wife's lands by the birth of a child of the marriage alive, the proof that the child was born raises the presumption that it was born

alive, and a peremptory instruction to the contrary by the court is reversible error.

**3. Evidence — Family History — Birth of Child — Declarations — Repute— Statutes—Registration of Births.**

Declarations of family physicians and general family repute as to whether a child was born of a marriage alive, making the father a tenant by the curtesy in his wife's lands, are received from necessity as the best evidence, but they are more restricted, as such, since the enactment of our statute requiring registration of births and deaths.

APPEAL by plaintiff from *Lyon, J.,* at November Term, 1917, of FRANKLIN.

*B. T. Holden, Yarborough & Beam for plaintiff.*
*W. M. Person and Manning & Kitchin for defendants.*

CLARK, C. J. The sole question involved in this case is whether or not a child born of a marriage between S. J. Parham and Hattie M. Parham was born alive. If it was, S. J. Parham was tenant by the curtesy in the lands described in the pleadings, and the judgment against him is a lien upon such lands. If it was not, then he had no interest in the lands and they are not affected by any lien by reason of said judgment.

The only persons present at the birth of the child were its mother, paternal grandmother, and the attending physicians, and they are now all dead. The judgment creditors offered as evidence that said child was born alive the testimony of the father, who testified that a child was born of his marriage to Hattie M. Parham; that he was not present at the birth, and all those who were are now dead. The judgment creditors then offered to show by the witness the declarations to him of the attending physicians (now deceased) that the child was born alive. The evidence was excluded, and the judgment creditors excepted.

The judgment creditors then offered E. H. Malone, a brother-in-law of S. J. Parham and Hattie M. Parham, and proposed to prove by family reputation that the child was born alive. This evidence was excluded and the judgment creditors excepted. It was then proposed to show that the child was born alive by general reputation in the community, and this evidence was excluded and the creditors again excepted.

The court instructed the jury that the judgment was not a lien upon the land, and the judgment creditors excepted and appealed.

There are exceptions to the general rule that hearsay evidence is incompetent, and the most usual one is as to matters of pedigree and family history, which can be proven both by showing general reputation and also by declaration of members of the family.

In 4 Chamberlayne Evidence, sec. 2981, it is held that general repu-
tation in the neighborhood is admissible on the question whether a child
was born dead or alive, and for this it cites *Wiess v. Hall* (Texas Civil
Appeal, 1911), 135 S. W., 384. This case contains a very full discus-
sion of the subject, with full citation of authorities, and a writ of error
was denied by the Supreme Court. The sole question involved there was
whether the child lived a few months or was born dead. The objection
to the testimony was that it did not purport to be family repute nor to
come from a member of the family, and hence was not an exception to
the general rule as to hearsay testimony. The testimony was given by
a witness who was living at the time in the neighborhood, and who testi-
fied, "The general report in the neighborhood at the time was that the
child was born dead."

The court called attention to the fact that the question was not as to
the relationship of the child, nor whether it was the issue of the mar-
riage, but simply, as here, to "the single uncomplicated issue whether it
was born alive or dead." The court adds that the occurrence was many
years before the trial, and that all the persons who might be supposed to
have actual personal knowledge of the fact, except the mother and half-
sister, were either dead or had disappeared. As in this case, the father
is the only survivor. The Court in the Texas case said that such corrob-
orative testimony "was therefore not only the best, but the only, evidence
obtainable. The evidence is also free from suspicion. The witnesses
have absolutely no interest in the controversy and no conceivable motive
to testify falsely. They were in a position to know the facts testified
about; that is, the general repute. The fact to be proven is plain and
simple and free from complications. . . . It occurred in a thinly set-
tled country neighborhood where such fact would be likely to attract
attention among the neighbors and be more or less discussed. Taking
all these circumstances together, there cannot be the slightest doubt that
the testimony is logically relevant and would be considered valuable by
any one searching for the very truth of the matter. In such case we
think it would be discreditable to the administration of justice to refuse
to admit the testimony"; adding, that to exclude it would be to restrict
the evidence of the testimony to the mother and the half-sister.

This case cites *Ringhouse v. Keever,* 49 Ill., 471: "In a population
as unstable as ours, and comprising so many persons whose kindred are
in distant lands, the refusal of all evidence of reputation in regard to
death, unless the reputation came from family relatives, would some-
times render the proof of death impossible, though there might exist no
doubt of the fact, and thus defeat the ends of justice."

The Texas Court further said: "If such evidence be admissible to
prove the death of the child, clearly it would be admissible to prove that

it was born dead. In the seeming conflict of authorities upon this question, we prefer to follow those in support of its admissibility as more in consonance with right, justice, and common sense. Such evidence is held admissible by Prof. Wigmore in his valuable work on Evidence, 2 Wigmore Ev., par. 1605, where the author says, speaking directly of this character of evidence: 'It seems finical to exclude from any consideration whatever, in a legal investigation, a class of evidence which is not only much relied upon in practical affairs, but is also sufficiently within the general rule of two exceptions (reputation and family history) to the hearsay rule. Such evidence was once in England orthodox enough, and its use has been vindicated on grounds of public policy and of principle by many American courts, as admissible in certain classes of cases.' "

Among the cases cited are *Henderson v. State,* 14 Tex., 503; *Flowers v. Haralson,* 6 Yerg (Tenn.), 494; *Jackson v. Etz,* 5 Cow. (N. Y.), 314; *Arents v. R. R.,* 156 N. Y., 1. Hearsay is always admissible to prove death, birth, marriage (except on indictments of bigamy), and other facts of family relationship and history when there is no direct evidence obtainable, or in corroboration or contradiction, upon the ground that it is the best evidence obtainable. 4 Chamberlayne Ev., secs. 2910-2981.

To the same purport, *Hoyt v. Lightbody* (98 Minn., 189), 116 Am. St., 366, where it is said: "The evidence of a witness whose knowledge with reference to the subject was derived from an intimate acquaintance with the family is admissible as to such facts of family history as marriage, kinship, name, and death," citing cases. 1 Greenleaf Ev., secs. 114a to 114g holds that declarations in such matters are competent *ex necessitate,* and that this can be shown either by declarations of a member of the family or by reputation in the family.

E. H. Malone, a brother-in-law, was competent to prove such reputation in the family. We are also of the opinion that the declarations of the attending physicians (since dead) made to the father at the time, that the child was born alive, are competent at least as corroboration of the father's testimony. They were disinterested, they were cognizant of the facts and their declarations, if believed, would be conclusive. The weight of the testimony depends upon the credit the jury would attach to the testimony of the father who testified that the declarations were made to him at the time. It is a question any one seeking the truth would naturally ask. It is not a question of competency, but of credibility, which is for the jury.

The first question any one would be likely to ask is, "What did the physicians present at the birth report to the father of the child?" It was their business to know and report to the father. Declarations of living persons made in the course of business and in the discharge of duty are competent. Much more is this true, where both duty and oppor-

tunity gave them knowledge of the fact and as they are now dead hearsay of their declarations is the only means of corroboration for the consideration of the jury. *Ewell v. Ewell,* 163 N. C., 238, and cases cited; *Gilliland v. Board of Education,* 141 N. C., 485; *Norris v. Edwards,* 90 N. C., 385; *Clements v. Hunt,* 46 N. C., 401; *Moffitt v. Witherspoon,* 32 N. C., 192.

There should be no question that E. H. Malone, the brother in law, who has no interest in the action, was competent to prove the reputation in the family that the child was born alive and also the testimony of E. S. Ford in corroboration that he knew the same fact by general reputation in the community. *Dowd v. Watson,* 105 N. C., 476; *S. v. Best,* 108 N. C., 747.

In any view, it was error to instruct the jury to answer the issue "No," for it was in evidence that the child was born, and the law presumes it to have been born alive. In trials for concealing the birth, it is held that proof of birth places the burden of proof that it was born dead upon defendant, and *a fortiori* this must be true in a civil action. The other side could have offered evidence of the same character that the child was not born alive, and it was for the jury to determine the truth of the matter.

Births and deaths are usually witnessed by very few, and therefore, *ex necessitate,* they can often be proven only by reputation. In *Flowers v. Haralson,* 14 Tenn. (6 Yerg.), 494, *Catron, C. J.,* says: "General reputation of such facts is not only competent, but highly credible, 3 Stark Ev., 1117," and discusses the matter from the standpoint of its absolute necessity in order to ascertain the truth where the witnesses are dead. The same evidence was admitted in *Arents v. R. R.,* 156 N. Y., 1. An admirable summary of the many instances in which reputation is competent proof are summed up in 10 R. C. L., 961-965.

The ground upon which such testimony is used is that of necessity as being the best evidence obtainable, and indeed, often the only evidence available after the lapse of time. Since our statute requiring a registration of births and deaths, such evidence as this of the declarations of the attending physicians (if dead) and of reputation in the family or in the neighborhood will be less necessary and therefore less competent except in limited cases as on proof of omission in the registration. Indeed, such reports are themselves hearsay and competent only because official and made in the line of duty. The weight of this testimony was a matter for the jury with opportunity to offer testimony of the same nature in rebuttal and its rejection was

Error.