### W. B. TURNER v. OWEN T. SEALOCK.

Decided December 7, 1899.

**1. Evidence—Heirship—Self-Serving Declarations.**

Where an immigrant to Texas was entitled to a grant of land by reason of his immigration, declarations of his sister to a witness subsequently testifying in a suit for the land, that she was an heir of such immigrant, and that he was dead, are self-serving and inadmissible.

**2. Same—Proof of Death—No Presumption.**

In the absence of a statute to that effect, mere lapse of time since a person was last heard from will not raise such a presumption as will dispense with proof of death.

**3. Same—Hearsay—Administration.**

Proof of death may be made by hearsay; but proof of an application for and grant of letters of administration on the estate of a person is not proof of his death.

4. Practice on Appeal.

Evidence which was offered below but rejected, can not be considered on appeal in support of the judgment.

ERROR from Harris. Tried below before Hon. WILLIAM H. WILSON.

*E. P. Turner,* for plaintiff in error.

*Jas. B. Goff,* for defendant in error.

GARRETT, CHIEF JUSTICE.—The State of Texas by its proper officer brought suit to escheat 640 acres of land situated in Harris County, patented to John Hammeridge, and made the representatives of W. R. Baker, deceased, parties to the proceeding. Before trial the plaintiff in error, W. B. Turner, came into possession of the estate of W. R. Baker, deceased, and intervened in the suit. Owen T. Sealock, the defendant in error, afterwards intervened also and claimed the land as the sole heir of his mother, Sarah Sealock, who was the sister and sole heir of John Hammeridge. When the cause came to trial the State of Texas, by the district attorney representing it, dismissed its suit for escheat of the land and the cause proceeded as a suit for the land between Owen T. Sealock and W. B. Turner. Trial was held before the court without a jury and resulted in a judgment in favor of the defendant in error.

Upon the trial the defendant in error proved by competent evidence the issuance of a conditional headright certificate to John Hammeridge for 640 acres of land on December 7, 1838, by the board of land commissioners for the county of Harrisburg, as a single man who arrived in the country previous to October, 1837, and also the subsequent issuance of an unconditional certificate therefor, and patent of the land in controversy by virtue thereof by the State. For purpose of proving heirship, the depositions of two witnesses residing in Fauquier County, Virginia, and of the defendant in error, who resided in Maryland, were read in evidence. These witnesses testified as to their personal acquaintance with John Hammeridge, and that he left Fauquier County in December, 1835 or 1836, for Texas. The plaintiff in error objected to the admission of portions of their testimony, and has assigned error upon the action of the court in receiving it, as shown by the following questions and answers in the deposition of W. R. Soule:

"Interrogatory 7. Did you ever know one John Hammeridge? If yes, where did he live? Did he remain there,—that is to say, in Fauquier County, Virginia,—or go elsewhere? If he went elsewhere, when was it, and where did he go? Is he living or dead? If dead, when did he die?"

Answer: "I heard from Mrs. Sarah Sealock a few days after he left that her brother, John Hammeridge, had left for Texas in December, 1835, or December, 1836, and that he left from her house, a short distance from my home, and a few years afterwards she told me that he had died in Texas; that was in 1839. She often, during the long time I knew her, talked about his going to Texas and dying there."

Also, third cross-interrogatory: "Is John Hammeridge, of whom you speak, living or dead? And if dead, when and where did he die, and how do you know? State the exact date of his death, and how you ascertained the date of his death, or that he was dead at all; where he was when you last saw him, in Texas or elsewhere?"

Answer: "He died about 1839 in Texas; I know this from his sister Sarah telling me this fact. I do not know the exact date of his death, and do not remember to have heard it. His sister Sarah told me about his death and the time as I have stated."

In the deposition of Joseph Connor the answer to the seventh interrogatory above set out is as follows: "John Hammeridge himself told me on the day before he left for Texas, in December, 1835, or December, 1836, that he was going to Texas the next day. Mrs. Sarah Sealock told me that said John Hammeridge went to Texas and died there about the year 1839."

In the deposition of the witnesses Soule, Connor, and the defendant in error Sealock, the answer of Soule to the fourth interrogatory is as follows: "I do not know when the marriage or death of John Hammeridge's father or mother occurred, as I was not present at either. She (Mrs. Sealock) told me they occurred before my birth."

To the fifth interrogatory the witness answered: "She (Mrs. Sealock) had two other children who died while infants, before I was born, so she told me. I know from her statements to me that she had two children only."

To the seventh he answered: "I heard from her that her father, Henry Hammeridge, and her mother, Martha, and her husband, Robert Sealock, were dead, and that Owen T. Sealock was her son, and that she had but two other children, and that they died while infants; in fact I heard from her the whole history of her family during the many years I was her neighbor."

In answer to the seventh interrogatory the witness Connor said: "Mrs. Sarah Sealock also told me that her husband, Robert Sealock, died long before 1835, and that John Hammeridge went to Texas and died there in the year 1839."

To the third cross-interrogatory he said: "I do not know where he (John Hammeridge) died, except from hearing say he died in Texas about 1839, and also from hearing his sister, Sarah Sealock, say the same thing."

To cross-interrogatory four, the defendant in error, Owen T. Sealock, answered: "My mother, Sarah Sealock, told me that my mother and John Hammeridge were the only children of Henry and Martha Hammeridge; and further, my mother told me that John Hammeridge was never married."

The objection to the admission of the evidence was that it was hearsay, and that the declarations of Sarah Sealock, to which the witnesses testified, were also inadmissible because they were self-serving. Proof of the relationship of Sarah Sealock to John Hammeridge; that their

father and mother were dead; that the defendant in error was the son of Sarah Sealock; that he is her sole heir and that she was the sole heir of John Hammeridge, if he was dead, was fully made; and the declarations of Sarah Sealock as to pedigree and the dates of the death of the members of the family were clearly admissible when not self-serving. John Hammeridge, by reason of his immigration to Texas, was entitled to a grant of 640 acres of land, and declarations made by Mrs. Sealock tending to show that she was his heir would be self-serving declarations. Such declarations, though they may be made by members of the family with respect to pedigree, are inadmissible. Byers Bros. v. Wallace, 87 Texas, 503. Sifted of all other evidence that was either admissible or fully shown by other competent testimony, there only remains one fact proved by the depositions objected to that would come within the objection urged against them, and that is the death of John Hammeridge. There is no evidence to show that he is dead except the declaration of his sister, Sarah Sealock, the mother of the defendant in error, and consequently nothing else to support the conclusion of the court as to that fact. Mere lapse of time since the person was last heard from is not sufficient to prove death in the absence of a statute. 2 Whart. on Ev., sec. 1274. Revised Statutes, article 3372, that absence beyond the sea or elsewhere for seven years shall be presumption of death, does not apply, because no absence from the State of Texas is shown. The evidence showed that John Hammeridge left the State of Virginia to go to the Republic of Texas, and it appears that he became a citizen and received a grant of land as a single man, but it does not appear that he ever absented himself from the Republic or State of Texas. There is absolutely no evidence to show that he is dead, except the declaration of his sister, unless the application for and grant of letters of administration should be so considered; but it has been held that such are not proof of death in a collateral inquiry, and the court correctly declined to receive them as such. English v. Murray, 13 Texas, 366.

Defendant in error offered the testimony of two witnesses to show that the witnesses had seen and talked with persons, since deceased, who told them that John Hammeridge was dead; that he died in Texas and that they were with him when he died. This evidence was excluded on objection by plaintiff in error. There is no cross-assignment of error, but in view of another trial of the case we hold that the evidence was admissible. The death of a person may be shown by hearsay evidence. Primm v. Stewart, 7 Texas, 178; Rice on Ev., 122, et seq. We can not consider excluded testimony in support of the judgment below.

For the error of the court in considering the evidence of Sarah Sealock to establish the death of John Hammeridge, the judgment of the court below will be reversed and the cause remanded for another trial.

*Reversed and remanded.*