### F. W. A. FISCHER v. D. C. GIDDINGS.

Decided June 7, 1906.

**1.—Fact of Death—Proof—Letters of Administration.**

An order of the court probating a will and appointing an executor or administrator is prima facie evidence of the facts authorizing such order, including the death of the decedent.

**2.—Limitation.**

Facts discussed and held insufficient to show title by limitation under the ten years' statute.

Appeal from the District Court of Hardin County. Tried below before Hon. L. B. Hightower.

*B. L. Aycock,* for appellant.—That the proceedings in the Probate Court were not sufficient evidence of the death of the testator, cited, English v. Murray, 13 Texas, 366; Turner v. Sealock, 54 S. W. Rep., 359.

W. W. *Searcy*, for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This is an action of trespass to try title. The suit was originally brought by D. C. Giddings, Sr., against appellant to recover the D. C. Giddings survey of 524 acres of land in Hardin County. After the institution of the suit D. C. Giddings, Sr., died and his son, D. C. Giddings, Jr., who is independent executor and trustee under his father's will, with leave of the court made himself a party plaintiff and prosecuted the suit to judgment.

The defendant disclaimed as to all of the land except 160 acres described in his answer by metes and bounds, as to which he pleaded not guilty and limitation of ten years.

The trial in the court below by a jury resulted in a verdict and judgment in favor of plaintiff for all of the land, such verdict having been returned under peremptory instructions of the court.

The land described in plaintiff's petition was patented by the State of Texas to D. C. Giddings, the testator of appellee, on December 5, 1883. Plaintiff introduced in evidence the will of D. C. Giddings executed December 30, 1901, and the order of the County Court of Washington County admitting the will to probate. By the terms of this will appellee was devised a one-third interest in the estate of the testator and appointed independent executor and trustee for the other devisees. The order admitting the will to probate appoints appellee independent executor and he has duly qualified as such.

We refer to the opinion of this and the Supreme Court on a former appeal (74 S. W. Rep., 85, and 77 S. W. Rep., 209) for a description and plat of the land in controversy.

The 160 acres claimed by appellant is described in his answer as follows:

"160 acres in the said Hardin County, being a part of the lands and tenements claimed in plaintiff's said petition, and known as the Philip Cotton homestead, and being that part of the same bounded on the east by the S. Laird survey 536 varas, and between parallel lines westwardly sd. lines being the N. line of the B. Mancha and the S. lines of the section numbered 374 and the Q. Shaw survey and 110 vrs. E. line of the Shaw sur. Beginning at the intersection of sd. B. Mancha and the sd. S. Laird; thence N. 536 varas to where the Sec. 374 intersects with the sd. Laird for the N. E. cor. of this 160 acres; thence W. 1,067 varas to the E. line of the sd. Shaw survey; thence S. 110 varas to S. E. cor. of sd. Shaw survey; thence W. with Shaw's S. line 780 vrs. a point in sd. line from which a line drawn south to the north line of Burk survey, will include the sd. 160 acres."

The evidence shows that J. J. McAdams built a small house on the land in 1875 and lived there for a year or more. He moved off and sold his claim to Philip Cotton for $10. He testified that prior to his removal from the land he paid $5.00 for filing on it and supposed it was filed on in his name; that the land was supposed to be vacant land and he did not settle on it intending to claim it by limitation.

N. S. Jordan testified for the defendant as follows: "I know the land in controversy; I moved in that neighborhood in 1889 from Kountze and lived there about two years and moved from there to Sour Lake in

1899, and then moved back there on the Q. Shaw survey. That land is the same land known as the Philip Cotton homestead and is known in that neighborhood as Phillip Cotton homestead. I moved my family there in June and went down there. I had a logging contract with the Reliance Lumber Company to put in logs. Alex Fountain was in the contract with me; that is A. S. Fountain. Alex Fountain moved on this land in July or August, 1889, and lived there about four years I think. At the end of that time Tobe McKinney took possession of the land. Tobe McKinney held the land for A. S. Fountain, stayed there to take care of Fountain's house. I think Tobe McKinney moved away from there in the spring of 1900 or latter part of 1899. Fountain bought the land and the improvements from Dr. Woodward. He set up the claim to 160 acres and asked me to go in with him and I refused to do so. After Tobe McKinney, Mr. F. W. A. Fischer took possession of the land. He is the defendant in this case. I am acquainted with him. F. W. A. Fischer stayed with Tobe McKinney the last year that Tobe was there and has been there ever since, and is there now."

He further testified on cross examination that he and Fountain bought the improvements on the land from Dr. Woodward in 1889, but they did not buy the land; that afterwards Fountain wanted to claim the land and told him it was vacant and that they could get deeds to it; that Fountain concluded it was vacant land immediately after they went on it, and he went to work to get a title. He refused to go in with Fountain to work up a title to the land because he did not think the land was worth it. On November 25, 1891, Fountain purchased the 160 acre tract from William D. Laird, and on June 3, 1898, conveyed it to appellant.

The land has been occupied by appellant since he purchased it in 1898 and he has paid the taxes that have accrued thereon since that time. He also paid several years back taxes which accrued prior to his purchase. This suit was brought June 14, 1901.

Appellant assails the judgment of the trial court: First, on the ground that the evidence fails to show title in plaintiff in that there is no evidence in the record showing the death of D. C. Giddings, under whom appellee claims; and second, because the evidence shows that the defendant has title under the ten years statute of limitation.

We think neither of the objections to the judgment are valid. In the case of English v. Murray, 13 Texas, 366, it was held "that letters of administration can not be collaterally offered to establish the death of the supposed deceased, or, where the death is admitted, to prove the time of his death." The same rule was announced and applied by this court in the case of Turner v. Sealock, 54 S. W. Rep., 358. In both of these cases proof of the fact and date of the death of the alleged deceased was essential to the establishment of the defense pleaded in the one, and the cause of action alleged in the other, and the question of the right of an executor or administrator to maintain a suit brought by him to recover property of the estate without showing the death of the decedent by evidence aliunde the order granting the application for probate or administration and granting letters was not passed on in either case.

We are of opinion that the rule quoted does not apply in suits brought by an executor or administrator. The Probate Court is only authorized

to appoint an executor or administrator upon proof of the death of the person upon whose estate administration is granted, and the order of the court probating a will and appointing an executor or administrator is at least *prima facie* evidence of the existence of the facts authorizing such order; and the right of the person so appointed to maintain a suit for the recovery of property belonging to the estate of the alleged decedent can only be questioned under a plea in abatement.

The evidence before set out fails to show adverse possession of the land in controversy for ten years prior to the institution of this suit, and for that reason the trial court did not err in instructing the jury to return a verdict in favor of the plaintiff.

It is true that Fountain, under whom appellant claims, went into possession in 1889, but he only bought the improvements at that time and is not shown to have set up any claim to the land prior to November, 1891, when he purchased it from Laird, and this was less than ten years before this suit was filed.

Jordan, the witness upon whom defendant relies to show adverse possession in Fountain, does not say when the adverse claim began, but it is shown by his testimony that Fountain thought the land was vacant when he went on it and declared his intention of obtaining a title, through deeds from its former possessors, and there is no evidence showing any intention on the part of Fountain to acquire title by limitation, or indicating that he was holding adversely to the owner prior to the date of his purchase from Laird. The burden was upon the defendant to establish his claim of title by limitation, and having failed to show an adverse claim for ten years prior to the filing of this suit, the trial court properly instructed a verdict for plaintiff.

We are of opinion that the judgment of the court below should be affirmed and it has been so ordered.

*Affirmed.*

Writ of error refused.