STEELE'S UNKNOWN HEIRS v. BELDING et al.†

(Court of Civil Appeals of Texas. Galveston. April 23, 1912. Rehearing Denied May 23, 1912.)

1. EXECUTORS AND ADMINISTRATORS (§ 4*)—ADMINISTRATION ON ESTATES OF LIVING PERSONS.

A grant of administration on the estate of a living person is void.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 15, 16; Dec. Dig. § 4.*]

2. EXECUTORS AND ADMINISTRATORS (§ 29*)—VALIDITY OF ADMINISTRATION — EVIDENCE OF DEATH.

While, on an inquiry collateral to grant of administration on the estate of a person, such grant is not admissible to prove his death, it is prima facie evidence thereof, on an inquiry as to validity of the administration, depending on his death.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 177–182, 1411; Dec. Dig. § 29.*]

3. NAMES (§ 14*)—ADMINISTRATION OF ESTATE—IDENTITY OF DECEASED.

An administration on the estate of a person, as one who had lived and died in a certain county, and title depending on the administration, cannot be overthrown, after the lapse of 70 years, on the theory that he was the same person living, at the time of the administration, in another county, on evidence merely that a person of the same name was so living.

[Ed. Note.—For other cases, see Names, Cent. Dig. § 10; Dec. Dig. § 14.*]

4. EXECUTORS AND ADMINISTRATORS (§ 20*)—PETITION FOR ADMINISTRATION — CLERICAL ERROR.

The statement in a petition, dated and sworn to March 26, 1838, for letters of administration on the estate of S., that S. "died * * * on or about the month of April, 1838," does not show S. was living at the time of the petition, but is clearly a clerical error.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 83–105; Dec. Dig. § 20.*]

5. ABSENTEES (§ 5*)—APPOINTMENT OF ATTORNEY AD LITEM.

Appointment of an attorney ad litem for defendant unknown heirs, before the beginning of the term to which the citation is returnable, is, at most, only an irregularity.

[Ed. Note.—For other cases, see Absentees, Cent. Dig. §§ 3–11; Dec. Dig. § 5.*]

6. ABSENTEES (§ 5*)—ATTORNEY AD LITEM—DUTIES.

The persons appearing and claiming to be the unknown heirs, against whom action is brought, not being such, the duty of representing such unknown heirs still rests on one appointed attorney ad litem for them.

[Ed. Note.—For other cases, see Absentees, Cent. Dig. §§ 3–11; Dec. Dig. § 5.*]

7. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Admission of evidence was harmless to appellants, where, eliminating it, the peremptory instruction given for plaintiffs would have been proper.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

8. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

Exclusion of evidence of a fact was harmless, where it was abundantly shown by other evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

Error from District Court, Harris County; Norman G. Kittrell, Judge.

Action by H. Waldo Belding and others against unknown heirs of William Steele. Judgment for plaintiffs. Defendants bring error. Affirmed.

Cobbs, Taliaferro & Cunningham, of San Antonio, Hardy & Roberts, of Houston, and Clark & Bliss, of San Antonio, for plaintiffs in error. James R. Masterson, E. P. & Otis K. Hamblen, and Presley K. Ewing, all of Houston, for defendants in error.

REESE, J. H. Waldo Belding and others, heirs of Henry V. Belding, and H. Masterson, James R. Masterson, and Presley K. Ewing, who claimed title under them to interests in the land involved, instituted this action in trespass to try title against the unknown heirs of William H. Steele, to recover a certain tract of land in Harris county, for which patent had been issued to heirs of William H. Steele by the republic of Texas. Plaintiffs, deraigning title under an administrator's sale of the certificate upon which the patent issued, alleged that the unknown heirs of the said Steele set up some claim of title to the land, and they prayed that the cloud resting upon their title by reason of this claim be removed. Citation issued December 20, 1909, to such unknown heirs of William H. Steele, which was duly published as required by statute, returnable February 21, 1910. On

January 17, 1910, H. N. Atkinson was appointed attorney ad litem to represent such unknown heirs, and filed answer consisting of a general denial and plea of not guilty. On February 19, 1910, W. H. Steele, Mrs. Jennie Bridgeman, Susan Steele Snyder, Edna Steele Leavell, M. E. Steele, Nellie Steele, John Bridgeman, and Elizabeth Bridgeman, the last four being minors, appearing by next friend, claiming to be the sole heirs of William H. Steele, appeared and answered, alleging in substance, in addition to a general demurrer, general denial, and plea of not guilty, that they were the heirs of the William H. Steele to whom the land had been patented; that the plaintiffs were not the heirs of H. V. Belding; and that the grant of administration upon the estate of William H. Steele, and the proceedings therein under which plaintiffs claimed title, were void for the reason that the said Steele was alive when said administration was granted, and by cross-action they sought to recover the title and possession of the land. The case was tried with a jury. The court gave the jury the following charge: "You are instructed to return a verdict for the plaintiffs, for the reason that the evidence is insufficient in law to warrant the nullifying of the ancient records under which they regularly deraign title." In response to this instruction, the jury returned a verdict for plaintiffs, upon which judgment was rendered. A new trial having been refused, defendants who answered as the heirs of William H. Steele prosecute this appeal.

The following facts are established by the undisputed evidence: Plaintiffs H. Waldo Belding, Abbie Belding, Augusta Belding Rogers, Mae Belding Finch, and Dwight Belding are the only heirs of Henry V. Belding, deceased. Plaintiffs H. Masterson, James R. Masterson, and Presley K. Ewing hold conveyances to the interests claimed by them respectively under said heirs. The defendants are the heirs of one William H. Steele who lived in Washington county, Tex., and died there in 1839. The land in controversy is a tract of about one-third of a league in Harris county that was patented by the republic of Texas October 29, 1844, to the heirs of William H. Steele, deceased, by virtue of the certificate No. 550 for one-third of a league, issued by the board of land commissioners of Harrisburg county June 6, 1838, to John W. Moore, as administrator of the estate of William H. Steele; the certificate being issued as the property of said estate.

On March 26, 1838, John W. Moore filed in the probate court of Harrisburg county his petition, addressed to the probate judge, praying to be appointed administrator of the estate of one William H. Steel. It is stated in the petition that said Steel died intestate in the county of Harrisburg, on or about the month of April, 1838; that he had no relatives in Texas known to petitioner; and that petitioner was a creditor of the deceased. The petition is sworn to by the petitioner before the clerk of the court March 26, 1838. The evidence leaves no doubt that the date of the death of Steel, as stated in the petition, is a clerical error, and that it was intended to be in the year 1837 or 1836, more probably the former. Upon this petition the following order was made; the date of the order not being shown: "There having been no objection filed within the time allowed by law to the appointment of J. W. Moore, administrator, on the estate of William H. Steel, deceased, it is ordered by the court that the said Moore be and he is hereby appointed as prayed for with full and ample power to settle this estate, always subject to the rules and orders of this court."

Although the order is not dated, it is found recorded on the same page of the probate records as the foregoing petition and is followed by the bond of Moore in the sum of $1,000, with Wm. K. Wilson and D. Harris sureties. Stating the proceedings in their chronological order, the next thing that is found is the following entry in the duly certified copy of the book or register of land certificates usually known as "the Lost Book of Harris County," kept as an archive of the General Land Office (subdivision 4, art. 62, Sayles' Revised Civil Statutes), to wit: "Wm. H. Steele, dec'd, by his administrator, Jno. W. Moore, claiming one-third of a league of land. Witnesses, Jno. W. Moore and Edwin Wray, being sworn, say: Moore says that he knew the deceased in October, 1835, as a citizen of this county, and that he served as a soldier in the campaign of the spring of 1836. Wray says that he knew the deceased in the fall of 1835, and also that he served as a soldier in our army, and knows him to have died suddenly near Harrisburg." Next follows the certificate, as follows: "No. 550. This is to certify that William H. Steele, by his administrator, John W. Moore, appeared before us, the board of land commissioners for the county of Harrisburg, and proved according to law that he arrived in this country in the fall of eighteen hundred and thirty-five and that he was a single man and entitled to one-third of a league of land upon the condition of paying at the rate of five dollars for every labor of irrigable land, three $50/100$ dollars for every labor of temporal or arable land, two $40/100$ dollars for every labor of pasture land, which may be contained in the survey secured to him by this certificate. Given under our hands, this 6th June, 1838. I. C. Hutchinson, President. Thos. Wm. Ward, John Woodruff, Associate Commissioners. Attest: A. J. Davis, Clerk."

Inventory and appraisement of the property of the estate of Wm. H. Steel were filed in the probate court July 16, 1839, showing this certificate, as the only property of

the estate, valued at $100. At the August term, 1840, of the court, the following order was made in this administration: "Order of Sale. August Term, September 5, 1840. Upon a petition filed in the matter of a sale of the property of this succession the court entered the following order: Having read the within petition, and being satisfied of the facts therein set forth, it is ordered that the administrator proceed to sell the property of the estate mentioned herein for the benefit of the heirs and creditors, in terms of the law and of his proceedings make due return. October 20, 1840. I. N. Moreland, Probate Judge H. C."

Following this order on July 7, 1841, Jno. W. Moore, as administrator of the said estate, executed to Henry V. Belden the following deed: "Republic of Texas, County of Harris. Know all men by these presents that whereas an order of sale was issued by the probate court for the county and republic aforesaid in the matter of the estate of Wm. H. Steel, deceased, bearing date October 20, 1840, which is of record on Harris county probate records, directing and empowering John W. Moore, the administrator of the estate of said Steele, to sell so much of the property of said estate as would satisfy the debts against said succession, and that by virtue of and in accordance with said order of sale and in terms of the law, I, said John W. Moore, administrator, as aforesaid, proceeded to advertise for sale in the Houstonian newspaper published in the city of Houston one certificate for ⅓ of a league of land No. 550 issued by the board of land commissioners of Harris county, June 6, 1838, to Wm. H. Steele as his headright giving notice for 20 days previous to the day of sale, that on the 6th day of July, 1841, by law a judicial sale day, that I should cause to be sold the said land certificate with all the rights accruing thereby to the holder. That on the said day at the courthouse door in the city of Houston between the hours of 9 o'clock a. m. and 3 o'clock p. m. I offered said land certificate for sale on a 12 months' credit as set forth in the notice given to the highest and best bidder, whereupon William K. Wilson, for Henry V. Belden, offered the sum of $33.33⅓, which being ⅔ of the appraisement and more than was offered by any one else, the said land certificate above described was sold to him the said Henry V. Belden his heirs or assigns forever. Now, therefore, in consideration of the premises and in pursuance to law and the powers vested in me by law and the order of court aforesaid and the sum of $33.33⅓ to me paid by William K. Wilson for Henry V. Belden, I, John W. Moore, administrator as aforesaid, acting in my official capacity, have bargained, sold, aliened, conveyed and do hereby grant, bargain, sell, alien, convey, transfer and set over in good full and bona fide sale and conveyance unto him the said Henry V. Belden, his heirs, executors, administrators and assigns the said above-described bargained and sold land certificate for ⅓ of a league of land with all the rights, etc., with power to act for, sue and receive patent for the same from the government of the republic of Texas. To have and to hold * * * forever by as good full and perfect right and title as the said Steel ever had or his heirs or assigns. In testimony I have hereunto set my hand and scroll for seal at the city of Houston this 7th day of July, A. D. 1841. [Signed] John W. Moore, Adm'r. [Seal.] Signed, sealed and delivered in presence of: Jno. N. Niles. Geo. Stevens." This deed was duly acknowledged and was filed for record February 22, 1845, and duly recorded.

There was also introduced in evidence the following certificate of W. R. Baker, clerk of the probate court of Harris county: "Republic of Texas, County of Harris. I, William R. Baker, probate clerk in and for the county aforesaid, do hereby certify and make known to all whom it may concern that John W. Moore was at the time of selling the headright certificate of William H. Steel, decd., No. 550, issued by the board of land commissioners for the county of Harris issued June 6, 1838, the legal administrator of the estate of said Steel duly qualified and as such he received an order of sale from the honorable probate court for Harris county to sell the same in terms of the law which was by him accordingly done, and a return of such sale made to the court which account having been examined was approved and ordered to be entered of record and the sale including the above-described land certificate confirmed by said court of probate, all of which is of record manifest. In testimony whereof I have hereto set my hand and affixed the impress of the seal of the aforesaid court of probate at office in Houston this 6th day of February, A. D. 1844. W. R. Baker, Clerk P. C. H. C."

On January 27, 1844, survey was made by the county surveyor of Harris county "for Henry V. Belden, assignee of Wm. H. Steel, deceased, by administrator, John W. Moore," under this certificate, of the land involved in this suit (being part of the land to which he was entitled to by the certificate). The field notes were filed in the General Land Office. Henry V. Belden paid the sum of $23.-30 in full of the government dues. On October 29, 1844, patent was issued by the republic of Texas "to the heirs of William H. Steele, deceased," for this land. The certificate was located on a league of land which had been previously located under a certificate belonging to John Belden, which had been sold and conveyed to Henry V. Belden, which certificate had not been passed by the board of land commissioners and the location had been "raised by consent of parties." It was shown that the Henry V.

Belden or Belding to whom this deed was executed was a citizen of Texas at that date, and afterwards removed to New York; the evidence identifying him with the person of that name who was shown to be the ancestor of plaintiffs. It is shown that the name was sometimes spelled "Belden" and sometimes "Belding." In 1870, H. V. Belding sold and conveyed the land in controversy to S. S. Munger on a credit, taking a mortgage to secure the purchase money, both recorded that year. On August 3, 1875, H. V. Belding recovered a judgment in the district court of Harris county against S. S. Munger foreclosing the mortgage and vendor's lien, upon which execution was issued and the land sold to Belding, to whom sheriff's deed was executed October 13, 1875, and filed for record same day. The undisputed evidence conclusively established that, prior to the deed to Munger, Belding openly and notoriously claimed to be the owner of the land and had a person looking after it for him, and also, after the deed from Munger to him, that during the time Munger owned it he was in actual possession and had a sawmill on the land, and that the land has been always known and spoken of as Belding's land. Belding paid all taxes up to the date of his deed to Munger, and from 1875, when he again got the title, up to date. There is no evidence that the defendants, the present appellants, ever at any time until their appearance in this suit asserted their right or ownership.

The evidence with reference to appellants' ownership is as follows: In 1839, and prior thereto, there lived in Washington county, in the town of Washington, a man named William H. Steele. He was a merchant in the town and was a commissioner of Robertson's Colony. Early in 1839 he died, leaving a wife and one child. The evidence shows that this Steele came to Texas about 1835, or prior thereto. After his death his wife was appointed administrator of his estate by the probate court of Washington county, but was soon thereafter discharged upon her own petition on account of her removal to the United States. Afterwards, in 1848, one Flanniken was appointed administrator by the probate court of Washington county. The inventory filed by the administrator shows that this Steele had considerable lands in Texas, and this was shown by other testimony. After the discharge of Mrs. Steele, J. S. Steele, a brother, made application to be appointed administrator; but it is not shown that his application was acted upon. That this William H. Steele lived and died in Washington county, as stated, was conclusively established, as was the fact that he did not die until some time in the early part of the year 1839. With regard to both Steeles, if there were two of them, it is shown, by persons who had occasion to use their names, that it was sometimes spelled "Steele" and sometimes "Steel."

Plaintiffs introduced in evidence certified copy of Spanish grant made in 1835 to Wm. H. Steele for one-fourth of a league lying in Cherokee and Smith counties; but as no effort was made to connect defendants' ancestor, or the Steele under whom plaintiffs claim, therewith, we think this piece of evidence is not of value. Defendants proved by Alonzo Steele, sole survivor of the battle of San Jacinto, that he was in Harris county, and at Harrisburg in 1837, that there were very few people living there, and he never heard of any people living there of the name of Steele.

[1] By their first assignment of error appellants complain of the refusal of the court to give a special charge requested by them that the burden of proof was upon plaintiffs to establish by a preponderance of the evidence that Wm. H. Steele, under whom they claim, was dead when the administration was granted. Under this assignment and the second and third assignments, appellants present the contentions: First, that administration upon the estate of a living person is void; and, second, that the death of Wm. H. Steele cannot be established by the proceedings in the administration upon his estate, nor by the affidavits and proofs before the board of land commissioners made by witnesses now dead, and not before the court.

With regard to the first proposition, that a grant of administration upon the estate of a living person is void, there is no necessity for discussion. The proposition is well settled, and is not disputed by appellees.

[2] As to the second proposition, that the death of Wm. H. Steele could not be established by the grant of administration, we think appellants are in error. In support of this contention, they cite Templeton v. Ferguson, 89 Tex. 47, 33 S. W. 329; English v. Murray, 13 Tex. 366; Turner v. Sealock, 21 Tex. Civ. App. 594, 54 S. W. 358; Mutual Benefit Life Ins. Co. v. Tisdale, 91 U. S. 238, 23 L. Ed. 314; and other cases. None of these cases support appellants' contention, as applicable to the facts of this case. The doctrine stated, by way of argument, in Templeton v. Ferguson, is that the fact that the person was living at the time of the grant of administration could be established by evidence dehors the record. The other cases decide that "in a collateral inquiry" the grant of administration is not admissible to establish the death of a person. We apprehend that appellants have misconstrued what is meant by "collateral inquiry" in trying to fit these cases to the facts of the present case. We can best explain what is thus meant by simple reference to the point really at issue in the cases cited. In Insurance Company v. Tisdale, the plaintiff sued a life insurance company to recover upon a policy of insurance issued by the defendant upon the life of her husband for her benefit. It was held that in such case the issuance of letters of administration upon the estate of

the intestate was not admissible as proof of his death. In English v. Murray, it became important to prove when English, the person indebted, died, as affecting the operation of the statute of limitations, and it was held that this could not be done by showing the date of the grant of administration upon his estate. In Turner v. Sealock, Sealock was suing as heir of Hammeridge, and his right to recover depended upon the fact that Hammeridge was dead. It was held that the grant of administration upon the estate of Hammeridge was not proof of his death in this collateral inquiry, citing English v. Murray, supra. In each of these cases the inquiry was as to matters entirely collateral to the grant of administration. Here the very subject-matter of the inquiry is the validity of the administration depending upon the death of Steele. It was necessary to establish that fact in order to authorize the grant of administration, and the case falls within the general doctrine stated in 4 Enc. of Evidence, p. 50, supported by many authorities cited, that "the fact that letters of administration have been granted upon a person's estate is prima facie evidence that the person on whose estate they have been granted is dead." McCamant v. Roberts, 66 Tex. 263, 1 S. W. 260; Withers v. Patterson, 27 Tex. 491, 86 Am. Dec. 643; Pleasants v. Dunkin, 47 Tex. 345.

[3] Appellants, in their brief, concede that, if no evidence had been introduced to show that Steel was living when the letters of administration were granted, the presumption would arise that the court acted within the limits of its jurisdiction; that is, that it was shown that Steele was dead, but that rules cannot apply in the face of evidence that he was living at that time. The conclusion is sound, but the premise is unfounded. We think there is no evidence in the record to rebut the presumption to which the judgment is entitled. Appellants' contention rests upon the assumption that the evidence is sufficient to authorize the conclusion that their ancestor, the Washington county Steele, was the person whose estate was in fact administered upon. We do not think this issue is raised by the evidence. Appellants' contention has no more substantial basis than that, at the time administration was granted upon the estate of William H. Steele, claimed and shown to be a resident of Harris county, a person of the same name was in fact living in another county in Texas. This, and nothing more. It must be remembered that these proceedings took place nearly three-quarters of a century ago; that every one personally cognizant of the facts must be presumed to have been long since dead. Title has been asserted, taxes paid, and the land bought and sold upon the faith of these old records. The title should not be allowed to be overthrown, after this lapse of time and under these circumstances, by the slender circumstance of the existence, at the time of the grant of administration, of a person of the same name, in another part of the state. That Moore would have undertaken to administer upon the estate of the Washington county Steele, who was not shown to have ever been in Harris county, a man of prominence then living, to have procured a certificate in his name, and sold it, all in order to obtain the purchase price, $33, would be a most extraordinary occurrence, and certainly one that would require some substantial evidence to justify its belief by any reasonable person. On the other hand, we have affidavits of Moore and Wray before the board of land commissioners to the effect that the William H. Steele, upon whose estate Moore had administered, was a resident of Harrisburg county, and had lived and died there. We do not think that reasonable minds could differ as to the conclusion that there were two persons of the same name. The evidence is not even sufficient to create a surmise or suspicion that the person upon whose estate Moore administered was appellants' ancestor. With this conclusion really appellants' whole case falls.

[4] There is no merit in the suggestion of appellants that it appears from the petition for letters of administration that Steele was then alive. The petition, as we have shown, was dated and sworn to March 26, 1838, and states that Steele "died intestate in the county of Harrisburg on or about the month of April, 1838." That this is merely a clerical mistake, possibly made by Moore's attorney, possibly by the clerk in entering the petition upon the record, is too clear to require discussion. It follows that the first three assignments of error must be overruled.

There is no merit in the fourth assignment of error, complaining of the admission in evidence of the certified copy of the entries from the record of the "Lost Book of Harris County," hereinbefore set out. Subdivision 4, art. 62, R. S.

The fifth assignment of error is overruled. The proposition asserted in the charge is sound, but our conclusion is that the evidence did not raise the issue as to whether the Steele upon whose estate Moore administered was living at the time. The proposition of law stated in the charge was, as to this case, a mere abstraction.

By the sixth and seventh assignments of error appellants complain that the court erred in instructing the jury to return a verdict for the plaintiffs. What we have already said to a large extent disposes of these assignments. The proposition stated under the assignments is, in substance, that plaintiffs having produced no evidence that William H. Steele upon whose estate the administration was granted was dead when the administration was granted, and defendants having introduced evidence tending to show that he was at that time alive, and that their ancestor was the person to

whose heirs the patent issued, and who were entitled to the certificate, an issue of fact was presented which should have been submitted to the jury.

As we have shown, the two basic facts upon which the proposition rests are not sustained by the evidence. The proposition really rests upon the alleged fact that there was evidence upon which the jury would have been authorized to find that there was no such person as the William H. Steele who lived in Harrisburg county in 1835, and who died there previous to the grant of administration in 1838, but that the administration was, in fact, fraudulently taken out upon the estate of appellants' ancestor, who at that time and for two years thereafter was living in Washington county. This contention rests upon nothing except the similarity of names, uncorroborated by a single fact or circumstance shown by the record, but, on the contrary, contradicted by every fact shown. Jester v. Steiner, 86 Tex. 419, 25 S. W. 411. The evidence is not sufficient to authorize a jury to thus destroy the title resting upon the faith of these old records. The proposition, to state it baldly, is that an administrator's sale and deed made 75 years ago, under which, without suspicion of its validity, title has been asserted, without dispute, for that length of time, may be invalidated by the sole fact that, at the time the administration was taken out, a person of the same name was living in another part of the country. To state the proposition is to answer it. The court did not err in instructing the jury to return a verdict for the plaintiffs. The assignments referred to and the several propositions thereunder are overruled.

[5, 6] The appointment of H. N. Atkinson as attorney ad litem for the unknown heirs of the William H. Steele, to whom the patent issued before the beginning of the term to which the citation was returnable, was, at most, only an irregularity, which does not affect the merits of the case. Appellants were not such unknown heirs, and after their appearance in the case the duty still rested upon the attorney ad litem to represent such unknown heirs, if any there may have been.

[7] The admission in evidence of the depositions of the witnesses referred to in the tenth assignment of error does not present ground for reversal. The evidence was admitted under agreement with the attorney ad litem to save expense. Appellants have shown no interest in the land. Eliminating this evidence, the peremptory instruction to return a verdict for the plaintiffs would have been proper.

The judgment referred to in the eleventh assignment of error was of no consequence, and, whether properly or improperly admitted in evidence, could not have affected the result.

[8] The diary of Col. W. F. Gray, offered in evidence by appellants, was properly excluded; but if not, as it is only contended that it tended to show that the name of appellants' ancestor was sometimes spelled "Steel," that fact, as is stated in appellants' brief, and as we have found, was abundantly shown by other evidence.

The testimony of Alonzo Steele that at one time he heard that some person in Harris county was trying to administer on his estate, and that he went to Harris county and stopped it, was entirely too remote in its bearing upon any issue in this case, and was properly excluded, on objection by appellees.

We have carefully examined each of the assignments of error and the various propositions thereunder, and are of the opinion that none of them presents grounds for reversal of the judgment. Under the evidence no other judgment could have been properly rendered than one for appellees, and the trial court did not err in so holding. The judgment is therefore affirmed.

Affirmed.

