JACKSON v. WALLACE et al.    (No. 8631.)

(Court of Civil Appeals of Texas. Dallas. March 11, 1922. Rehearing Denied April 15, 1922.)

1. Judgment ☞336 — Bill of review can be filed attacking foreclosure judgment.

Where the judgment creditor filed a suit to foreclose the lien of the judgment previously secured by him and obtained a judgment for such foreclosure, the defendants, who were not personally served, could thereafter file a petition in the nature of a bill of review directly attacking the judgment of foreclosure as part of the same proceedings in which the judgment was rendered.

2. Judgment ☞403—Separate suit to enjoin judgment held ancillary to bill of review in suit in which it was rendered.

A petition to enjoin the enforcement of a judgment foreclosing a prior judgment lien, although it was designated as an original proceeding, was in effect merely ancillary to relief sought by a petition in the proceeding in which the judgment was rendered in the nature of a bill of review to set aside that judgment.

3. Death ☞2(1)—Statutory presumption does not arise without proof of absence from state.

The statutory presumption of death from absence beyond the sea or beyond the confines of Texas for a period of seven years under Rev. St. art. 5707, does not apply where there was no evidence locating the absentee's whereabouts outside of the state after his disappearance, but in such case the burden of proving death of the absentee is upon the party alleging it.

4. Death ☞4—Circumstantial evidence sufficient.

In a civil suit the death of a party need not be proved by primary and positive proof, but may be established by proof of circumstances from which the jury can infer that he was dead.

5. Death ☞4—Evidence held to show death of absentee.

Under a bill of review attacking a judgment because defendant was dead when the suit was brought, where it appeared that defendant had not been heard from for 14 years before the trial, evidence that at the time of his disappearance he was suffering from a disease which would have caused death within a short time, unless properly treated, and that witnesses had made inquiries to discover his whereabouts since the suit was instituted, but had been unable to get any trace of him, is admissible and sufficient to warrant the jury in finding that he was dead when the suit was brought.

6. Evidence ☞147—Records and testimony of clerk as to how they were kept are admissible to show execution was not issued.

Where plaintiff in a suit to foreclose a judgment lien introduced oral testimony by an attorney that execution had been issued on the judgment, defendant could introduce testimony by the district clerk as to the manner in which his records were kept and the records themselves to show that, if the execution had been issued, it would have appeared in the record, and that it did not.

7. Evidence ☞553(4)—Hypothetical question asked expert as to probable length of life held proper under the evidence.

On bill of review attacking a judgment because defendant was dead when suit was brought, evidence showing that defendant had disappeared 12 years before the suit was instituted, and that at the time he was suffering from a disease commonly known to be incurable, which impaired his health and required him to use crutches, held sufficient to support a hypothetical question asked a physician as to the time a person in the condition therein described could live.

8. Appeal and error ☞1001(1)—Jury's answers sustained by evidence are conclusive.

Where the answers of the jury to special issues are sustained by evidence, the Court of Civil Appeals is precluded by the answers from reviewing those issues.

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Suit by J. T. Jackson against J. C. Wallace and others to foreclose a judgment lien, in which the defendants filed a petition in the nature of a bill of review to have the judgment foreclosing the lien set aside. Judgment for defendants, and plaintiff appeals. Affirmed.

W. W. Ballew, of Corsicana, for appellant.
Jack & Jack and Callecutt & Johnson, all of Corsicana, and Francis & Hughes, of Fort Worth, for appellees.

HAMILTON, J. This is an appeal from a judgment annulling a former judgment of the same court and perpetually enjoining the levy of an execution and order of sale upon a certain tract of land.

On March 6, 1894, appellant recovered a judgment in the district court of Navarro county, Tex., against John C. Wallace for $1,288. On March 8, 1897, an abstract of the judgment was filed in the office of the

county clerk of Navarro county. Thereafter, on February 24, 1910, which was, as is to be observed, nearly 16 years subsequent to abstracting the judgment, appellant filed a petition in the district court of Navarro county seeking foreclosure of a judgment lien upon the property in relation to which the instant suit arose. The judgment lien was alleged to exist by virtue of appellant's obtaining and abstracting the judgment entered on March 6, 1894, and filed for abstract on March 8, 1897, as above recited.

The cause was tried at the April term, 1919, of the district court, and an appeal from the judgment resulting from that trial was prosecuted to this court by appellant. Here the case was reversed and remanded because of an erroneous charge given to the jury. Jackson v. Wallace (Tex. Civ. App.) 222 S. W. 676.

The case being tried again at the October term, 1920, of the court, and resulting in a judgment adverse to appellant, he prosecutes this appeal.

The original suit in which abstract of judgment was filed was numbered 3746. The suit filed to foreclose the alleged judgment lien was No. 7700, and citation was had against J. C. Wallace in this latter suit by publication. The judgment was obtained on the 24th day of March, 1911, in this latter suit foreclosing the alleged judgment lien.

On the 26th day of June, 1911, a petition in the nature of a bill of review to have this judgment set aside was filed by appellees. In this petition appellees sought to have the judgment set aside and vacated for these alleged reasons: (1) Because at the time of the institution of the foreclosure suit on February 24, 1910, J. C. Wallace, the defendant therein, was dead, and accordingly no suit could be maintained against him, and hence all the proceedings, including the judgment rendered, were illegal and void; (2) because the judgment rendered on March 6, 1894, upon which the foreclosure suit was founded, had by lapse of time ceased to have any legal life or effect before foreclosure suit was filed on February 24, 1910, more than 10 years having expired from the date of the judgment to the date of the filing of the foreclosure suit, and more than 10 years having expired from the date of the issuance of any execution upon the judgment obtained March 6, 1894, and in the same connection it was asserted that no execution was ever issued upon the judgment dated March 6, 1894; (3) because, even if execution was issued within 12 months from the date of such judgment, then, in such event, more than 10 years having expired after such judgment was obtained before any execution was issued and before the filing of the instant suit, the judgment had lost its vitality and had ceased to exist altogether so that no subsequent judgment could be bottomed upon it;

(4) because appellant, Jackson, never in fact acquired and fixed any lien upon the property involved in the suit for the reasons recited above, and also for the further reason that the abstract of judgment was not filed in the manner required by law so as to fix a judgment lien on the property of J. C. Wallace, and also for the reason that the recording of such abstract of judgment in the county clerk's office would not have the legal effect of creating and fixing the lien because at the date of its record—that is, on the 8th day of March, 1897—there was no valid judgment against Wallace by virtue of the fact alleged that no execution had been issued upon the judgment within 12 months after its rendition so as to keep it alive under provisions of law; (5) because, even if the recording of the abstract of the judgment created any lien, it was created on March 8, 1897, the date the abstract of judgment was recorded, and would remain in force only 10 years from that date, so that it ceased to exist on March 8, 1907, under provisions of law, and accordingly had passed away before the suit was filed; (6) it was alleged that in no event could a lien attach to the property involved in this suit, because it was the homestead of J. C. Wallace from the time he acquired it until the date of his death, alleged to be some time in 1908, and at his death became the homestead of the petitioners, who at such time were minors, and that it had remained their homestead continuously until the date of the pleading.

The petition for bill of review was answered by various exceptions and specific answers to allegations. By supplemental petition definite facts suggesting the death of J. C. Wallace were pleaded by appellees.

The case was submitted to a jury upon various special issues, and, upon the answers given by the jury, judgment was entered for appellees.

The issues and their respective answers were as follows:

"Was John Wallace dead on June 5, 1911? You will answer this question 'Yes' or 'No.' We, the jury, answer yes.

"Was John Wallace dead February 24, 1910? You will answer this question 'Yes' or 'No.' We the jury answer yes.

"Is John Wallace dead? You will answer this question 'Yes' or 'No.' We, the jury, answer yes.

"Was an execution issued on the first judgment obtained by Jackson against Wallace within a year from its rendition? You will answer this question 'Yes' or 'No.' We, the jury, answer no.

"If you answer the fourth question in the affirmative, then answer the following question: Was there another execution issued upon such judgment next before February 24, 1910? You will answer this question 'Yes' or 'No.' We, the jury, answer no.

"Did John Wallace live upon the land, or part of it, as a home any part of the year

1906? Answer this question 'Yes' or 'No.' We, the jury, answer yes.

"Did John Wallace make a contract with Poole to improve the land with the purpose and intent to make his home upon it? Answer this question 'Yes' or 'No.' We, the jury, answer yes.

"Did John Wallace, when he left the country, whether in 1906 or later, intend to remain away permanently? You will answer this question 'Yes' or 'No.' We, the jury, answer no."

[1] Application for injunction was filed a few days previous to the filing of the bill of review. It was numbered 8041. The bill of review took the number of the suit to foreclose the alleged judgment lien, which was No. 7700. On this circumstance the first assignment of error in appellant's brief is based, and the effect of this assignment is that the court erred in permitting appellees to abandon the original suit for injunction and go to trial upon a pleading filed June 26, 1911, as a bill of review for the reason that the petition for bill of review was filed in cause No. 7700 and was accordingly not a proper pleading in cause No. 8041, the number designating the petition for injunction. No authority is called to our attention to sustain the position taken in this assignment of error, and no reason occurs to us to suggest its soundness. The bill of review under the circumstances of the case was a proper method of obtaining the annulment of the judgment which foreclosed the judgment lien against the property. It was filed within about three months after the judgment was rendered. It could have been filed, under the statute, within two years after its rendition. See article 2026, Revised Civil Statutes. It was a direct proceeding in the suit brought to foreclose the alleged judgment lien for the purpose of setting aside the judgment in that case. The allegation that citation was obtained by publication in the suit, that appellees were then minors, and that they knew nothing of the claim of appellant that a judgment lien had attached to the property involved in the suit which they claimed to own as the heirs of J. C. Wallace, alleged to be dead, clearly authorized the proceeding.

[2] The injunction proceeding, although it took a separate and distinct number, was ancillary to the determination of the questions involved under the petition for bill of review. The determination of the rights in question under the bill of review necessarily determined the rights in relation to the injunction. Accordingly we think the assignment is clearly without merit.

The second assignment of error complains of the acts of the court in admitting as evidence the testimony of various witnesses to the effect that they had made inquiries for J. C. Wallace since June 5, 1911, without discovering any trace of him, and that he had never been heard from. It was specified under this assignment of error that such evidence was not admissible to prove that J. C. Wallace died prior to February 4, 1910, the date on which the suit for foreclosure of the judgment lien was instituted, or prior to June 5, 1911, the date on which the original petition for injunction was filed, such inquiries, it being contended, having been made pendente lite, and accordingly not admissible for any purpose. The testimony of these witnesses in relation to this matter was to the effect that J. C. Wallace left Navarro county in 1906; that he had never returned; that so far as any of them knew he had never been heard from; that he had never written a letter to any of his relatives, who were numerous and who resided in Navarro county; that he was afflicted with a vile and probably fatal disease at the time he left Navarro county which rendered his physical condition extremely weak and frail; that the affliction from which he suffered had been upon him for a number of years and rendered him altogether repulsive. Some of these witnesses also testified that he was insane and it was proved without controversy that he had been committed to an insane asylum repeatedly. They stated that when he left Navarro county it was his intention to go to Marlin and Waco, Tex., and finally to New Orleans, La. This testimony was given in 1920, and accordingly, if it was true, then J. C. Wallace had not been seen or heard from during a period of 14 years previous to the date of the trial.

[3] This testimony, we think, was admissible as reflecting circumstances which tended to prove the death of J. C. Wallace. No part of it is sufficient to prove his absence beyond the sea or beyond the confines of Texas for a period of 7 years so as to create the presumption of death under article 5707, Revised Civil Statutes. We do not find any evidence in the record definitely locating his whereabouts outside of Texas at any time after he was last seen in Navarro county. This being so, the burden of proof was upon appellees to establish the death by evidence. Article 5707, Revised Civil Statutes; Turner v. Sealock, 21 Tex. Civ. App. 594, 54 S. W. 359.

[4] However, appellees could not be required to prove this fact by primary and positive evidence. We think it could be established by proof of circumstances such as the record contains and from which the jury concluded that J. C. Wallace was dead at the time the suit was instituted. It is well settled that the death of a person in such cases may be established by hearsay evidence. Primm v. Stewart, 7 Tex. 178; Scott's Lessee v. Ratliffe, 5 Pet. 81, 8 L. Ed. 54. The facts and circumstances delineated in the testimony, all considered together, ought to be held to have probative force of at least equal dignity with hearsay evidence.

[5] The evidence adduced in behalf of ap-

pellees detailing the physical infirmities and diseased condition under which J. C. Wallace was suffering when he was last seen, as well as the evidence of Dr. Kelton, a physician, to the effect that in such condition as these witnesses described he could live but a few months, reinforced by the further proof that he never communicated with any of his relatives after his disappearance, and that it had been his custom to return at frequent intervals when he went away as well as to let some of his relatives hear from him from time to time, considered in the light of the further fact that at the time of the trial he had been absent and unaccounted for during a period of from 12 to 14 years, in our opinion would justify the finding of the jury with reference to the death, and all such testimony was properly admissible. These remarks dispose of both the second and third assignments of error adverse to the contention of appellant.

[6] The fourth and fifth assignments of error complain of the action of the court in permitting the deputy district clerk to testify as to how the books of the district clerk's office were kept with reference to the issuance and return of citations and with reference to matter which regularly is inserted in the file docket and other records of this officer. They also complain against the admission of the official records themselves of the office with reference to these matters. The proposition is advanced that such testimony is irrelevant, immaterial, and necessarily prejudicial. The evidence was admitted upon the question of whether or not an execution had been issued and returned under the judgment obtained March 6, 1894. There was no record of the issuance and return of such execution. There was testimony on behalf of appellant that an execution was issued by the district clerk and returned by the sheriff of Navarro county, and also that an additional execution was issued to another county and returned by the sheriff of that county. It is required as a matter of law that certain records with reference to the issuance and return of writs of this nature shall be kept, and that a file docket and fee book shall also be kept containing records relating to such matters. These records were kept at the time appellant contended the executions were issued and returned. They were in the custody of the deputy district clerk as an official of the court at the time of the trial, and it seems to us that the presumption ought to be that these records would reflect the fact if such executions were issued and returns made by the sheriff. There was testimony on behalf of appellant which asserted that the executions were issued and returned as above stated. This evidence was given many years after the transactions to which it related. It was given by a practicing attorney through whose mind

many events relating to various phases of different cases in litigation must have passed in the intervening space of time. It would not be unreasonable, we think, for a jury to conclude, in the light of the fact that the records in which such instruments were regularly recorded contained no trace of them, that the attorney who testified that they were issued and returned might have confused them with other transactions. In these circumstances we regard this evidence as competent and admissible. The testimony of the deputy district clerk and also the records of the district court and of the sheriff's office were admissible as tending to prove that no execution had been issued and no return made.

[7] Complaint is made that the court erred in admitting the testimony of Dr. L. E. Kelton based upon hypothetical questions propounded, for the reason that the questions were not based upon real testimony, but were based upon hearsay testimony and opinions of witnesses not based upon facts.

The hypothetical question described the condition of J. C. Wallace in conformity with testimony of different witnesses. It presented his age as being 48 years; it described him as being badly afflicted with a loathsome disease commonly known to be incurable; it depicted him as being entirely unable to do any physical labor on account of such disease, which had so impaired his physical health as to require him to walk on crutches. It described his body as being covered with sores and his condition as being offensive and repulsive to the senses. The question presented stated that he had been in this condition two or three years. The elements of this hypothetical question were taken from testimony which we find in the record. The physician answered that a person in such condition could live but a few months without treatment. The question did not contain the vice ascribed to it by appellant, and the evidence was admissible.

The remaining assignments of error assail the verdict of the jury and answers to the particular issues propounded. All the issues submitted to the jury were raised by the pleadings and the evidence. The answers are sustained by the evidence, and the criticisms of them are without merit.

[8] We think the questions of fact which control and determine this litigation were properly presented under the pleadings and the evidence, and that they were correctly submitted to the jury. The answers given by the jury are sustained by evidence sufficient to support them, and this court is precluded by such answers comprehended in the verdict of the jury upon which the judgment appealed from is based, and accordingly it is our duty to affirm that judgment.

Affirmed.